Howard STICH, Appellant,

v.

Claude WILLIAMSON, Appellee.

No. 5217.

Court of Civil Appeals of Texas.

El Paso.

May 15, 1957.

Rehearing Denied June 5, 1957.

W. Pat Camp, Leonard Brown, San Antonio, for appellant.

Joe Burkett, San Antonio, for appellee.

HAMILTON, Chief Justice.

This was a suit filed by appellee against appellant on an alleged contract of employment, wherein the appellant had employed the appellee as a superintendent of the electrical part of his business, and for balance due on two trucks alleged to have been sold to appellant. Appellant answered with denial, and brought cross-action for $1,933.10. Upon the verdict of the jury, the court entered judgment for appellee in the sum of $5,823.34, consisting of unpaid salary in the amount of $971.43; one-half of net profits amounting to $2,185.-91; $400 balance due on the trucks; and $2,266 found by the jury to be due on individual contracts of appellee. From said judgment the defendant below, Howard Stich, perfected his appeal.

It seems that appellee's suit was based upon three agreements, one of which was in writing, and is as follows:

"San Antonio, Texas,
August 29, 1950.

"Mr. Claude Williamson
"San Antonio, Texas
"Dear Sir:

"This will evidence our agreement whereby I am employing you as superintendent of my electrical business, effective September 1st, 1950.

"You are to devote your full time to your employment with me and your duties will be those generally performed by a superintendent of an electrical business.

"You are to have a salary of not exceeding $100.00 per week, and in addition, I agree to pay you during the period of your employment with me an amount equal to fifty (50%) per cent of the net annual profits, if any, derived by me from all electrical contracts, such net annual profits to be determined by my accountant in the annual financial statement at the close of my fiscal year. In computing said net annual profits there shall not be included income from any of the following:

"Plumbing business, plumbing repair work, sale of appliances and fixtures, installation of utilities under any contract bearing a utility number:

but said profits shall be compiled strictly from the operation of the electrical business. In this connection, it is contemplated that there will be charged against the electrical department rent for the space occupied by it and that the usual accounting procedure will be used

in setting up the books and in depreciation of the property and equipment.

"Your employment may be terminated within thirty (30) days after written notice to either party has been given, in which event adjustment of your compensation will be made, on a pro rata basis.

"If the above correctly sets forth your understanding of our agreement, please so indicate by signing the duplicate copies hereof as provided below, and return one signed copy of this letter to me.

"Yours very truly,

"(Signed)   Howard Stich
"Howard Stich

"Accepted and agreed to
this 31 day of August, 1950

"(Signed)   Claude Williamson
"Claude Williamson"

Appellee alleged further that there was an oral agreement that the title to two trucks owned by appellee was transferred to appellant upon an agreed price of $2,000., and further that it was agreed that appellee had at the time of entering into the written contract, some individual contracts uncompleted, which were to be completed and fifteen per cent of the net profits therefrom was to go to appellant, and eighty-five per cent of the net profits to appellee. The two oral contracts were disputed, the appellant contending that there was no agreed price for the trucks, and that there was only one contract, known as the H. B. Zachary Sewage Disposal contract, carried under No. 1–E on the books of the company, which was to be completed and the net profits divided 85 per cent to appellee and 15 per cent to appellant. Appellee contended that there were a number of other jobs that came under the same category, wherein the profits were to be divided 85 per cent to appellee and 15 per cent to appellant. These disputed jobs involved net profits of less than $700.

Appellee introduced in evidence a statement of account prepared by appellant's accountant, Walter L. Jungmann, which statement showed a balance of $1,933.10 owed by appellee to appellant. This statement of account was not attacked as a whole, but various items of said account were attacked by appellee. The statement of account, incidentally, covered all of the electrical jobs handled during the time in question. Except as to the H. B. Zachary Sewage Disposal job, No. 1–E, all jobs were treated as though appellee was entitled to 50 per cent of the net profits, only the Zachary job being treated as an individual contract of appellee where he was allowed 85 per cent of the net profit.

It appears that the items included in appellant's audit which were contested by appellee were two items of inventory shortage one for $1,449.20 for the period from September 1st to December 31, 1950, and an inventory shortage in the amount of $725.14 from January 1, 1951 until the end of the contract. These items were charged individually to appellee by the accountant for the reason, as given by Mr. Jungmann, that when they were called to the appellee's attention, appellee agreed that they be charged against him individually. This was denied by appellee. Another item included in the audit that was attacked by appellee was an item of $1,071.61 charged on the H. B. Zachary Sewage job, No. 1–E Extra, for material. Appellee testified that no material was to be furnished to Zachary on said job; further there was evidence that the item of material was furnished after the job was completed and paid for.

Appellant maintained that the contract of employment ended December 31, 1950, and the audit showed no salary was paid to appellee thereafter. In answer to the special issues, the jury found, in effect, that the contract of employment did not end until March 8, 1951, and the court allowed appellee the sum of $971.43 in its judgment for salary. In answer to special issues, the jury found that the agreed price of the

trucks sold to appellant by appellee was $2,-000, which left a balance of $400, as the judge allowed in his judgment. In answer to Special Issues numbers 6 and 7, the jury found the net profits of appellant's contracts from August 31, 1950 to the completion of the several electrical contracts amounted to $4,371.82. This was the exact amount shown in the audit to be the net profits of the entire business during said period of time. The court, in its judgment, allowed one-half of said net profit to appellee and in addition thereto, allowed appellee $2,266 as the amount due appellee Williamson by appellant Stich on the individual contracts as found by the jury.

As can be seen from the facts as above stated, there are a lot of complications. The court stated during the course of the trial that if he had known the case was going to be presented like it was, he would have had an independent audit. The court and the jury both had a very difficult situation to resolve. In the first place, the only audit used in the trial was the one made by appellant's accountant, and it was relied on by both parties except for certain items; yet the audit made no distinction between claimed individual contracts of appellee and contracts of the appellant's business, except as to the Zachary job.

From a thorough study of the entire Statement of Facts, we have been unable to find support in the evidence for the findings of the jury and the judgment of the court for the sum of $5,823.34 for appellee.

However, we overrule appellant's points complaining that the court erred in not entering judgment for appellant on motion for judgment non obstante veredicto, and for not entering judgment on the verdict. While the evidence falls far short of supporting the judgment entered by the court for appellee, we feel that there were so many contested issues in regard to the statement of account and audit of the business that were not determined by the jury, that it is not possible to enter a proper judgment

on the verdict of the jury. It must be remembered that the only complete audit available was the one prepared by the appellant's accountant and introduced in evidence by appellee. In connection with said audit the court submitted issues designed to determine the net profits realized from the operation of the business, separate and apart from the net profits realized from the individual contracts of appellee. The court submitted issues designed to determine the amount due and owing appellee on the individual contracts, separate and apart from the contracts of appellant. Since there were no separate books kept on individual jobs of appellee, and on the jobs of appellant, we can see the difficulty the jury had in giving answers to such issues based on the evidence. The issues were submitted in the nature of general charges, wherein the jury was to take into consideration the several disputed items contained in the audit. If, however, every disputed issue were resolved against the appellant, still, under the facts that are undisputed, the answers of the jury to such issues cannot be sustained. Except for the items of $400 which the court allowed appellee for the balance due on trucks, and the item of $971.43 allowed by the court for unpaid salary, the balance of said judgment, amounting to $4,451.91, would have to come from net profits of the business, and then, before appellee would be entitled to any part of the net profits, whether 85 per cent or 50 per cent, there would first have to be deducted from appellee's part the amount of appellee's debts, amounting to some $3,900, paid by appellant at or about the time the contract of employment started; the amount of cash advanced; and the amount of accounts of the business collected by appellee which were reported but not turned in. When this is done, and after giving appellee the benefit of all disputed issues, the amount of recovery that appellee may be entitled to does not even approach the sum of $5,823.34.

The audit shows that the total net profits of the entire business, including individual

jobs and jobs of appellant during his period of employment, from September 1st to March 9th, was $4,371.82. There is no dispute as to the audit in the main. There is an item of $1,071.61 charged to the Zachary Sewage Disposal Job No. 1–E Extra which appellee contends should not have been charged to that job, because the contract with Zachary did not call for the furnishing of any material and, further, the material charged in said item was ordered and delivered long after the job was completed and paid for. Of course, if this is not properly chargeable, the profits would be that much more. On the other hand, if the shortage in inventory which was charged to appellee, individually, was wrongfully charged to him, then the charge would be against the cost of operation, and the profits would be $2,174.34 less. Furthermore, if appellee, as found by the court in its judgment, is entitled to additional salary of $971.43, that is an additional charge against the cost of operation, which would further lower the profits in that amount. If all these disputed issues are decided in appellee's favor, the net profits of the entire business would amount to only $2,297.66. So it is readily seen that appellee could not possibly be entitled to $4,451.91 as his part of the net profits, regardless of which contracts are figured on an 85 per cent basis or 50 per cent basis.

We think, before the court can write a proper judgment in this case, it must first be determined by the jury or the court, as the case may be, whether there were other individual contracts than the Zachary Sewage Disposal Job, and, if so, what they were and whether or not there was an agreement that appellee was to receive 85 per cent of the net profits of the other individual contracts; whether or not the shortage of inventory was due to appellee's converting that much of the inventory to his own use and benefit, or whether it was just an unexplained loss of inventory; and whether or not the item of cable, in the amount of $1,071.61, charged to the Zachary disposal job after the work was supposed to be completed, was properly chargeable.

The judgment of the trial court is reversed, and the case is remanded for a new trial.

McGILL, J., not participating.